Audrey L. ZEEMAN, Individually and as
Executrix of the Estate of Leon S.
Lees, Jr., Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 356, Docket 31969.

United States Court of Appeals
Second Circuit.

Argued March 20, 1968.

Decided May 28, 1968.

Jerome Kamerman, New York City, (Kamerman & Kamerman, New York City), for plaintiff-appellant.

Irwin B. Robins, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for the Southern District of N. Y., Richard M. Hall, Asst. U. S. Atty.), for defendant-appellee.

Before LUMBARD, Chief Judge, FRIENDLY, Circuit Judge, and BLUMENFELD, District Judge.*

BLUMENFELD, District Judge:

During the years 1960, 1961 and until December 12, 1962, when he died, the appellant's husband, Leon S. Lees, Jr., had been a general partner in the stock brokerage firm of Ira Haupt & Co. The appellant and her late husband had filed joint tax returns for the years 1960 and 1961 reflecting taxable income in the amounts of $83,359.79 and $89,107.05 respectively. After his death, the appellant, as she was permitted to do under § 6013(a) (3) of the Internal Revenue Code of 1954, filed a joint return for the year 1962 reflecting taxable income of $63,575.79. All of this reported income had been earned by her husband alone.

The appellant sustained a substantial loss[1] as a limited partner in Haupt & Co. in 1963 when it became insolvent as a result of its imprudent advances of credit to Allied Crude Vegetable Oil Refining Corporation, the principal tool of Tino DeAngelis in a huge financial fiasco known as the "salad oil scandal."

What started out as a clear-cut suit for refunds of the taxes paid on those joint returns for 1960–1962, based on a claim of a right to carryback to those years the loss she suffered in 1963, ended up with a dismissal of her action and a judgment against her on counterclaims of the government for additional tax liabilities because of understated income and overstated deductions by the joint taxpayers in those years.

---

\* Of the District of Connecticut, sitting by designation.

1. The District Court found she was entitled to deduct $241,310.68 against her ordinary income for 1963. Zeeman v. United States, 275 F.Supp. 235, 260 (S.D.N.Y.1967).

## The Carryback

The appeal raises several questions. The first is whether a net operating loss sustained by appellant in 1963 was available as a carryback under § 172(b) (1) (A) of the Code against her late husband's income reported in joint returns for prior years. The court below in a well-reasoned opinion, 275 F.Supp. 235 (1967), ruled that since she was not able to file a joint return for the period when the loss was suffered, she could not carry the loss back against income reported in the years when joint returns were filed. We affirm his ruling, but on a narrower ground.

■ Contending that when she sustained a loss in 1963 she was the same taxpayer she had been in 1962, notwithstanding the fact that she was no longer a joint taxpayer with her late husband, the appellant tenders a lengthy and involved argument premised on the omission of the words "the taxpayer" from § 172 when the Code was revised in 1954. We did not regard that as a notable omission in Allied Central Stores, Inc. v. Commissioner, 339 F.2d 503 (2d Cir. 1964), cert. denied, 381 U.S. 903, 85 S.Ct. 1447, 14 L.Ed.2d 285 (1965), and we find no basis in the legislative history for concluding that Congress intended thereby to effect any substantive change in the basic purposes of the carryback provisions. See Beckett v. Commissioner, 41 T.C. 386, 417–418 (1963) (reviewing the legislative history). Obviously, loss carrybacks may be utilized only by taxpayers. Omission of "the taxpayer" in § 172 simply brings its language into conformity with most of the other provisions in the Code relating to deductions. The appellant's argument, if we understand it,[2] may bear on a question of who sustained the loss,

the answer to which was formerly sometimes difficult to reach in cases where a loss corporation or its assets were acquired through acquisition or merger by a successor corporation. Here, since it is undisputed that the appellant is the person who suffered the loss, the question is rather against whose income it may be carried back.

■ While net operating losses of one spouse may be carried backward or forward against the combined taxable income of both to years in which they filed or will be able to file joint returns, Treas.Reg. § 1.172–7(c), even if separate returns are filed, Treas.Reg. § 1.172–7(b), the privilege of filing joint tax returns given to married couples is something less than a merger of them into a permanent, single economic unit. The merger of their income for tax purposes is linked between different years for only so long as they are married.

■ The legal requirements for utilization of loss carrybacks in this area have not remained undefined. As pointed out in Calvin v. United States, 354 F.2d 202, 205 (10th Cir. 1965), where the pertinent regulations are analyzed, the presence of the critical requirement for carrying forward a loss against combined income of married taxpayers is dependent on their marital status at the time the loss was sustained. This case is the other side of the same coin considered in *Calvin*. There, the right of Mrs. Calvin to carry forward her premarital losses was restricted to that portion of the subsequent jointly reported income which was received by her. We see no valid reason why the same rule should not apply in the reverse situation here. Unfortunately, however, none of

2. Reduced to bare bones, it seems to be that the omission of the words "the taxpayer" from the operative section of the 1954 Code, § 172, served to broaden the availability of the deduction provided therein; that the change rendered the Supreme Court's decision in Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957), which had focused on those words, inapplicable to all cases concerning carryovers, thus modifying the previous test for the required economic continuity between a corporation suffering the loss and its successor which subsequently claimed a deduction for that loss.

the jointly reported income in 1960–1962 was the appellant's.

Nor can it be deemed to have been her income by operation of law. Although the essential objective of the privilege of filing joint tax returns given to a husband and wife with a lower effective tax rate, Int.Rev.Code of 1954 § 6013, was to give all married persons the same tax reward on combined income that married persons in community property states enjoyed before its enactment, that was accomplished without changing their private ownership rights. New York is not a community property state.

However, since the government has not appealed from Judge Levet's determination that the loss of appellant's investment in Haupt was an ordinary rather than a capital loss, and that it was realized in 1963, 275 F.Supp. at 260, it will be available to her as a credit against any taxable income she may have received in the five years following 1963. Int.Rev.Code of 1954 § 172(b) (1) (B).

### The Government's Counterclaim

It was the well-established rule when the appellant began this suit that the burden of showing her right to carryback her loss and to demonstrate that she and her husband had fully paid the taxes otherwise due would be on her. This follows from the principle that when a taxpayer sues for refund of taxes erroneously paid, Larchfield Corp. v. United States, 373 F.2d 159 (2d Cir. 1966), or for refund of taxes paid in a prior year by carrying back to it a loss sustained in a later year, Commissioner v. Van Bergh, 209 F.2d 23 (2d Cir. 1954), the action is one for restitution and a plaintiff must show that good conscience requires the refund. Cf. Taylor v. Commissioner, 70 F.2d 619, 620 (2d Cir. 1934), aff'd sub nom. Hel-

vering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935). "This of necessity [put] in issue every credit or deduction found in the particular tax return for which refund is sought or in a related tax return," Missouri Pac. R.R. v. United States, 338 F.2d 668, 671, 168 Ct.Cl. 86 (1964), as well as the adequacy of the amount of income reported. It was immaterial that the government had not asserted a deficiency. E. g., Compton v. United States, 334 F.2d 212 (4th Cir. 1964). Cf. Lewis v. Reynolds, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932).

During the trial, the government came forward with evidence of bank deposits by the taxpayers substantially in excess of the income reported, unreported capital gains, both short and long term, and interest income. Some charitable contributions and business expenses taken as deductions on the returns were disallowed for lack of any substantiation. 275 F.Supp. at 245–250 (Amended Findings of Fact). To the extent that these resulted in a computation of more taxable income than reported, they would, of course, operate to diminish the amount of any refund properly due. And, since no refund was allowable against the taxes paid on the joint returns, the government, after close of the evidence, was granted permission to file a counterclaim based on assessments of deficiencies for the years 1960, 1961 and 1962.

Appellant contends that because the assessments were made after the trial of the case presented by the appellant's original complaint, it was then too late for the government to rely upon them as a basis for counterclaims because that deprived her of the privilege given under Int.Rev.Code of 1954 § 7422 (e) of resisting those assessments in the Tax Court.[3] Although § 7422(e) speaks

---

3. Section 7422(e) states in part:
   "(e) Stay of proceedings.—If the Secretary or his delegate prior to the hearing of a suit brought by a taxpayer in a district court * * * for the recovery of any income tax, * * *

mails to the taxpayer a notice that a deficiency has been determined in respect of the tax which is the subject matter of taxpayer's suit, the proceedings in taxpayer's suit shall be stayed during the period of time in which the

only of deficiencies determined prior to hearing, this was a grant of an additional privilege to taxpayers to get their cases into the Tax Court—not a restriction on the government's right to file a late counterclaim if the court in its discretion allowed this. Cf. Florida v. United States, 285 F.2d 596 (8th Cir. 1960). We need not consider whether it would have been an abuse of discretion for Judge Levet to have refused a stay pending Tax Court review if Mrs. Zeeman had asked for one, even though the case was not within the letter of § 7422(e). No request was made.

Her contention with respect to the government's counterclaim is that just because the government incorporated into an assessment information gleaned from the evidence offered at the trial, she should not have been obliged to carry the additional burden of overcoming a presumption of the correctness of the commissioner's assessments. Whether in the Tax Court or in the District Court, the burden on the taxpayer does not differ. United States v. Lease, 346 F.2d 696, 700 (2d Cir. 1965). She had the opportunity to make any defense, e. g., the receipt of loans which might have been audited as income, inheritance or gifts which might have been included as income, or any other explanation. Judge Levet offered to reopen the case for a third time and permit her to submit further proof. More was not required.

The appellant also contends that because the court had already found only $2,742.28 of the 1960 bank deposits to constitute income before the government swelled its assessment to include further income from unexplained bank deposits in the amount of $20,759.74, which the court had also previously considered, any consideration of administrative regularity to support a presumption of correctness of the assessment was patently absurd.[4] There is no need to theorize whether Judge Levet also so regarded it, for the fact is that he did not find the additional $20,759.74 assessed to have been income despite the fact that no additional evidence whatsoever was subsequently offered by the appellant. Cf. Lesser v. United States, 368 F.2d 306, *en banc* opinion at 310 (2d Cir. 1966). But while administrative regularity standing alone may be a thin reed on which to rest tax liability, unexplained bank deposits are not. See Hague Estate v. Commissioner, 132 F.2d 775 (2d Cir.), cert. denied, 318 U.S. 787, 63 S.Ct. 983, 87 L.Ed. 1154 (1943). As to the amount of unexplained bank deposits which the court did find to have been income, the appellant argues that when only $8,804.-42—about 2.18%—of bank deposits amounting to $407,356.04 made over a four year period are left unexplained, the burden should shift back to the government to prove that they constituted taxable income.

There is nothing inherently illogical in the view that evidence of receipts in excess of those reported is a sufficient premise from which to deduce that the

taxpayer may file a petition with the Tax Court for a redetermination of the asserted deficiency, and for 60 days thereafter. If the taxpayer files a petition with the Tax Court, the district court * * * shall lose jurisdiction of taxpayer's suit to whatever extent jurisdiction is acquired by the Tax Court of the subject matter of taxpayer's suit for refund. If the taxpayer does not file a petition with the Tax Court for a redetermination of the asserted deficiency, the United States may counterclaim in the taxpayer's suit, * * * within the period of the stay of proceedings notwithstanding that the time for such pleading may

have otherwise expired. The taxpayer shall have the burden of proof with respect to the issues raised by such counterclaim or intervention of the United States except as to the issue of whether the taxpayer has been guilty of fraud with intent to evade tax. This subsection shall not apply to a suit by a taxpayer which, prior to the date of enactment of this title, is commenced, instituted, or pending in a district court * * * for the recovery of any income tax * * *."

4. Similar contentions were made with respect to the assessments for 1961 and 1962.

receipts were income. As held in United States v. Doyle, 234 F.2d 788, 793 (7th Cir.), cert. denied, 352 U.S. 893, 77 S.Ct. 132, 1 L.Ed.2d 87 (1956), a criminal prosecution for tax evasion where no presumption in favor of the government was applicable:

"Of course, proof of the bank deposit theory is circumstantial in nature, but we know of no reason why such deposits may not be considered in determining income, when there is no evidence that they represent anything other than income. In other words, such evidence will support an inference that the deposits are taxable." And the weight of that inference as stated in United States v. Bender, 218 F.2d 869, 871 (7th Cir.), cert. denied, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955), is such that "the Government satisfies its burden of proof when it shows that the taxpayer has received more income than was reported. * * *"

"Any other rule would burden the Government with investigating the many possible nontaxable sources of income, each of which is as unlikely as it is difficult to disprove. * . * * [T]he Government is not required to negate every possible source of nontaxable income, a matter peculiarly within the knowledge of the defendant." Holland v. United States, 348 U.S. 121, 138, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954).[5]

No doubt it was valid argument to urge upon the trier that the explanation of such a high percentage of the deposits made it plausible, as she suggests, that the balance should be attributed to refunds on merchandise returned to stores, birthday gifts and the like. And, had the trial judge been so persuaded in view of all the evidence presented to him, we could have upheld his finding as not "clearly erroneous." Fed.R.Civ.P. 52(a). He was not compelled to make such a finding. We are concerned with a rule of evidence, not as a calculating device,[6] but as a unifying principle. The court below did not misapply the rule as to the burden of proof.

■ In the original proceedings below held prior to the time the government filed its counterclaim, Mrs. Zeeman did contend that certain of the deposits were not taxable as income. Two contentions which were rejected below are renewed on appeal. The first is that reimbursements of 1962 medical expenses received from insurance companies in 1963 should not have been counted as income for that year because they were in effect repayments of loans she had made to the estate. Additionally, she claims that $12,000 received from Haupt in 1963 was a gift to her from her deceased husband's former partners and, therefore, not taxable income. Judge Levet rejected both contentions as not proved. 274 F.Supp. 245. There is no basis for upsetting those determinations as "clearly erroneous"; they are affirmed.[7]

5. United States v. Bender and Holland v. United States were criminal cases in which the government carried the burden of proving unreported income beyond a reasonable doubt.

6. With respect to uncorroborated travel and entertainment expenses taken as deductions, the judge gave the taxpayer the benefit of the so-called *Cohan* rule by approximating them. That rule is no longer applicable to such items for taxable years ending after December 31, 1962. Congressional purpose in enacting § 274(d), Rev.Act of 1962, was expressed: "Subsection (d) overrules with respect to the described expenditures the case of Cohan v. Commissioner * * *." S.Rep. No. 1881, 87th Cong., 2d Sess. in 2 U.S.Code, Cong. & Ad.News, pp. 3304, 3475 (1962).

7. However, because of the determination that substantial income was erroneously reported on the 1962 return, it seems likely that there will be insufficient taxable income remaining for 1962 to have enabled Mrs. Zeeman to obtain any tax benefit from the medical expense deduction taken for that year. If on remand that should prove to be the case, reimbursements to appellant of such amounts from insurance companies in 1963 would not constitute taxable income, Int.Rev.

*New 1962 Refund*

Included as part of the appellant's reply to the government's counterclaims based on the deficiency assessments for 1960, 1961 and 1962 was a counterclaim for the taxes she had paid on the 1962 return. Her counterclaim alleged that the only taxable income reported on that return was what had been received by her husband from the Haupt partnership during that year and, since Haupt reported its income on a calendar year basis, what he received prior to his death in early December of 1962 should have been included on the return filed by his estate[8] and not on the 1962 joint return filed by the appellant. Int.Rev.Code of 1954 §§ 706, 441 and 443.

The defendant challenged the appellant's right to file her counterclaim, asserting that the court was without jurisdiction to consider it since it asserted a new ground for refund, cf. Root v. United States, 294 F.2d 484 (9th Cir.), cert. denied, 368 U.S. 940, 82 S.Ct. 382, 7 L. Ed.2d 338 (1961); Godwin v. Brown, 249 F.2d 356 (8th Cir. 1957); Rogan v. Ferry, 154 F.2d 974 (9th Cir. 1946), and had not yet been filed with the commissioner. Int.Rev.Code of 1954 § 7422.[9] Furthermore, the government argued, the new claim for refund was time barred by the statute. Int.Rev.Code of 1954 § 6511(a). However, on oral argument below, the government was willing to help overcome these obstacles. Its counsel offered to obtain a prompt denial of the new refund claim to qualify it for the court's consideration provided that the appellant would stipulate that she had executed valid waivers of the statute of limitations against the government's deficiency assessments.

▮ It may be inferred that the government was then fully aware of the underlying facts relating to the allegations in the appellant's counterclaim. What is not easy to understand or overlook is counsel's insistence upon the appellant's stipulation to the execution of the waivers[10] as a condition upon his offer. The waivers had no relevance to any need of the government to do homework on the problem presented by the allegations in the appellant's counterclaim. The conception of regulations for the convenience of the government as devices to impede "the just, speedy, and inexpensive determination of every action," has no place in the federal courts. Fed.R. Civ.P. 1.

The government went ahead and proved that valid waivers of the statute of limitations against the assessments had been duly executed. At this juncture the trial court concluded that it lacked jurisdiction to grant affirmative relief on the appellant's counterclaim and dismissed it as such, but nevertheless undertook to consider it as an affirmative defense in the nature of recoupment against assessments for the year 1962. On that basis, the court found that the allegations of the counterclaim had been proved and concluded that the appellant was "entitled to reduce any additional amount owed to the government for 1962 taxes, pursuant to this opinion, up to the amount of the erroneously paid taxes for 1962." 275 F.Supp. at 261.

▮ We do not agree that the theory of equitable recoupment, established in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), marks the limit of the taxpayer's recovery. For Angelus Milling Co. v. Com-

---

Code of 1954 § 104(a) (3), and her tax liability for 1963 should be adjusted accordingly.

8. The estate adopted a fiscal year ending November 30, 1963.

9. Section 7422(a) states in part:
"(a) * * * No suit or proceeding shall be maintained in any court for the recovery of any * * * tax al-

leged to have been erroneously * * * collected, * * * until a claim for refund or credit has been duly filed with the Secretary or his delegate * * *."

10. Also, we are at a loss to understand why the appellant did not agree to stipulate, for it was perfectly clear that waivers had been executed.

missioner, 325 U.S. 293, 295, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945), teaches that the Commissioner waives his right to insist upon compliance with IRS procedures when his other actions show that compliance will serve no purpose. When, for example, the Commissioner has investigated the merits of a timely claim, despite its technical defects, he may not rely on technicalities to defeat the taxpayer's court action. Dale Distributing Co. v. Commissioner, 269 F.2d 444 (2d Cir. 1959). Cf. W. K. Buckley, Inc. v. Commissioner, 158 F.2d 158 (2d Cir. 1946). If waiver should be implied when the Commissioner has directed his mind to the taxpayer's claim, despite its procedural defects, it follows *a fortiori* that the government should not be permitted to assert a technical objection where, as here, it has stated that the taxpayer's claim would be rejected as soon as it was submitted to the IRS. And, since the waivers of the statute of limitations against assessments by the government carried with them extensions of the period for filing claims for refund, Int.Rev. Code of 1954 § 6511(c) (1), there was no occasion for resorting to the *Bull* doctrine of equitable recoupment. Cf. Tucker v. Alexander, 275 U.S. 228, 231–232, 48 S.Ct. 45, 72 L.Ed. 253 (1927).

Although in this instance the relief to the appellant on her counterclaim should not have been restricted to recoupment, it does not necessarily follow that she should have received an affirmative judgment to recover the taxes paid on the 1962 joint tax return. How they are to be applied is another matter. The appellant contends that she should have had an unconditional award for that amount. The matter deserves closer observation.

The reasons to support the conclusion that the decedent's income from Haupt should be taxed to the estate logically apply also to the additional income which the government assessed against Mrs. Zeeman for 1962. Relying on its contention that her counterclaim should be dismissed for lack of jurisdiction, the government did not plead as a set-off, by way of recoupment or otherwise, cf. Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937), Note, 52 Harv.L.Rev. 300–307 (1938), that the taxes on amounts received by her which became income to the estate in its 1963 tax year had not been paid by the estate.

In designing her counterclaim certain contradictions were in-built. The effect of the court's finding that the allegations of the counterclaim had been proved was to hive off into the estate $63,575.79 of her husband's receipts from Haupt which had been erroneously reported as income in the 1962 return, plus $1,887.72 of additional similar receipts which were the subject of the assessment for 1962,[11] for the reason that they should have been included in the estate's 1963 income tax return.

But there is another aspect of the matter, and that is that there is an obligation to observe consistent treatment of that income so that it shall not completely escape from taxation. Although by the allowance of Mrs. Zeeman's counterclaim the income reported in the 1962 joint return was to be treated as received in a different year by a different taxpayer, still there was a unity between those different persons. Mrs. Zeeman as the executrix of her late husband's estate and as its sole legatee was a "related taxpayer" under the definitions of 26 U.S.C. § 1313(c): " (4) fiduciary and beneficiary, legatee, or heir." In her various capacities she has acted for all the legal persons involved. Cf. Yagoda v. Commissioner, 331 F.2d 485, 489, n. 2 (2d Cir. 1964).

11. All but $1,887.72 of the total amount of $8,197.05 which the court found represented increased ordinary income for 1962 was attributed to disallowed deductions. Without leaning too heavily on the rest of the findings, it may be assumed that the $1,887.72 of unexplained bank deposits were from receipts of the decedent from Haupt. The same theory which supported the recoupment allowed by the court would apply to identify this as income to the estate, rather than to Mrs. Zeeman.

The estate's 1963 income tax return discloses that it took a deduction of $21,-359.25, the only amount it reported as having been received from Haupt as part of the decedent's distributable share of partnership income. Although the will of Mr. Lees is not in the record before us, the parties agree that Mrs. Zeeman was the sole legatee. We assume that this amount was "required to be distributed currently." If so, it was a proper deduction on the estate's return for 1963. Int.Rev.Code of 1954 § 661. The estate took it, and Mrs. Zeeman reported that same amount as income from the estate on her 1963 return. The executrix did not, however, report or pay taxes on the income erroneously reported and omitted by Mrs. Zeeman in the 1962 joint return. Despite her having successfully maintained these inconsistent positions, tax liability for that income is not barred. Congress has enacted provisions which permit relief to either the government or the taxpayer if and when they suffer from inconsistent treatment of tax matters by the other side. The circumstances of this case fall squarely within a statutory frame to authorize an adjustment of tax liabilities between Mrs. Zeeman as an individual and as an executrix.

Section 1312(3) (A) of the Code permits an adjustment to avoid what would otherwise result in a double exclusion of gross income, when as in this case, "[t]he determination requires the exclusion from gross income of an item included in a return filed by the taxpayer or with respect to which tax was paid and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year, or from the gross income of a related taxpayer * * *."

Since both her individual and the estate's 1963 income tax returns were before the court, whatever modification of the judgment is required by this opinion may be made. In effecting this modification the award Mrs. Zeeman should have received on her counterclaim for refund of 1962 taxes paid will no longer be abortive as recoupment against nonexistent 1962 tax liabilities, but will be effective as a set-off against her tax liabilities for 1960 and 1961.

Affirmed in part and remanded for further proceedings.