CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, a pension trust, et al., Plaintiffs,

v.

Paul E. JOHNSON and Lois S. Johnson, Defendants.

No. 91 C 1039.

United States District Court, N.D. Illinois, E.D.

Nov. 7, 1991.

---

---

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Pursuant to provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1001 *et seq.*, plaintiffs Central States, Southeast and Southwest Areas Pension Fund and its trustees brought this suit against defendants Paul and Lois Johnson to collect the delinquent withdrawal liability of R D Motor Express, Incorporated. The Johnsons are alleged to be members of a control group that includes R D Motor. Plaintiffs moved for summary judgment against both defendants, relying on the statement of uncontested facts contained in the parties' proposed pretrial order. Paul Johnson does not oppose summary judgment, but Lois Johnson does. Lois Johnson instead requests that summary judgment be granted in her favor.[1]

The parties have stipulated to the following facts.[2]

1. Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") is a multiemployer pension plan within the meaning of Section 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3). Plaintiffs, Marion M. Winstead, Howard McDougall, R.V. Pulliam, Sr., Arthur H. Bunte, Jr., R. Jerry Cook, Robert C. Sansone, Robert J. Baker, and Harold D. Leu, hereinafter referred to as the "Trustees", are the present trustees of the Pension Fund and are collectively the plan sponsor of the Pension Fund within the meaning of Section 4001(a)(1)[10] of ERISA, 29 U.S.C. § 1301(a)(10). The Trustees administer the Pension Fund at 9377 West Higgins Road, Rosemont, Illinois 60018–4938.

5. Johnco, Inc. ("Johnco") was an Indiana corporation with its principal place of business in the State of Indiana.

6. R D Motor Express, Incorporated ("R D Motor") was a subsidiary of Johnco.

7. R D Motor was subject to a collective bargaining agreement executed with a Teamster Local Union under which R D Motor was required to make specified contributions to the Pension Fund when its employees worked pursuant to the terms and conditions of the collective bargaining agreement.

8. Defendant Paul E. Johnson owned 100% of the capital stock of Johnco, and

---

1. Although no formal motion for summary judgment was filed, Lois Johnson requests such relief in her response to plaintiffs' motion for summary judgment. Her response will be treated as a motion for summary judgment.

2. Paragraphs 2 through 4, which contain legal conclusions as to jurisdiction and venue, have been omitted.

Johnco, in turn, owned 100% of the capital stock of R D Motor.

9. In August 1985 Paul E. Johnson leased a building located in Delaware County, Indiana to R D Motor. In addition, in August 1985 Paul E. Johnson leased one semi-tractor to R D Motor and leased another semi-tractor to another corporation known as Davco Trucking Co., Inc. Paul E. Johnson was the owner of record of the leased building and semi-tractors.

10. The leasing activities described in the preceding paragraph were not incorporated.

11. Mr. Paul E. Johnson and his wife, the defendant Mrs. Lois Johnson, have been married for thirty-six (36) years. The monies used to purchase the commercial building and the semi-tractors referenced in paragraph 9, *supra*, came from joint bank accounts maintained by Mr. and Mrs. Johnson.

12. The rental income produced by the leasing activities described in paragraph 9, *supra*, was not segregated in a bank account exclusively for Mr. Johnson's use.

13. For the year 1985, Mr. and Mrs. Johnson filed a joint U.S. income tax return. This tax return reported a net loss for tax purposes of $9,613 as a result of the leasing activity involving commercial buildings and semi-tractors described in paragraph 9, *supra*. Mr. and Mrs. Johnson claimed this loss as a deduction from their combined gross income on their 1985 joint U.S. tax return.

14. On or about October 25, 1985, the Pension Fund issued, and shortly thereafter R D Motor, Johnco and all trades or businesses alleged by the Pension Fund to be under common control with them received, a notice and demand for payment of withdrawal in accordance with Sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1). This notice informed Johnco, and all businesses under common control with it, that it was required to discharge its withdrawal liability in a lump sum, or in monthly payments due on December 1, 1985.

15. Notice and demand letters were not separately addressed to Paul Johnson or Lois Johnson.

16. On or about December 23, 1985 the Pension Fund issued, and shortly thereafter R D Motor, Johnco and all trades or businesses alleged by the Pension Fund to be under common control with them received, a past due notice and demand for withdrawal liability, pursuant to Section 4219(c)(5)(A) of ERISA, 29 U.S.C. § 1399(c)(5)(A), which advised Johnco and all trades or businesses alleged by the Pension Fund to be under control with it, of the possible consequences of failure to pay any such liability.

17. Neither R D Motor, nor Johnco nor any trade or business alleged by the Pension Fund to be under common control with them requested arbitration.

18. Neither R D Motor, Johnco nor any trade or business alleged by the Pension Fund to be under common control with them have made any withdrawal liability payments, or otherwise satisfied any portion of the withdrawal liability assessment.

Lois Johnson submitted an affidavit containing the following additional facts which plaintiffs do not contest.

4. I was not involved in the operation of any of Paul's business activities, including his unincorporated leasing activities. I did not intend to form a partnership with Paul or to carry on a business or any business activity with Paul. I was never consulted about, and did not participate in, the management or control of his leasing activities or any other of Paul's business activities. For the tax year 1985, Paul reported a net loss from his leasing activities on the federal income tax return we filed jointly for that year. He claimed this loss as a deduction from our combined gross income on the 1985 tax return.

5. During 1985, I accompanied Paul to the R D Motor Express offices on those weekends and holidays which he worked. During those personal visits, I occupied my time doing needlepoint, knit-

ting, and occasionally filing papers for Paul or performing other clerical activities for him but was never compensated for any of those activities. I was never an employee of Paul or any business in which he had an interest.

■ The parties agree that a pension plan may recover a withdrawal liability assessment if it can show that (1) the employer was assessed withdrawal liability pursuant to 29 U.S.C. § 1399(b)(1); (2) the employer did not initiate arbitration pursuant to 29 U.S.C. § 1401(a); and (3) the employer is in default on paying its liability, 29 U.S.C. § 1399(c)(5). *See Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054 (7th Cir.1988). Further, 29 U.S.C. § 1301(b) provides: "An individual who owns the entire interest in an unincorporated trade or business is treated as his own employer, .... [A]ll employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." Thus, each member of a control group of trades or businesses is jointly and severally liable as an employer. The parties agree that withdrawal liability is due and owing from R D Motor. It is also agreed that Paul Johnson was the owner of 100% of the stock of Johnco which in turn owned 100% of the stock of R D Motor. Further Paul Johnson operated an unincorporated leasing business which therefore is under common con-

trol with R D Motor. Paul Johnson does not dispute that, as a member of the control group, he is an employer jointly and severally liable for the withdrawal liability. The legal dispute that remains in this case is the question of whether Lois Johnson should also be considered a member of the control group who is also liable. Plaintiffs contend that, because certain assets owned by Paul Johnson were purchased with funds from a joint bank account and rental proceeds were deposited in joint accounts, Lois Johnson is a member of the control group.

The leasing business, whether characterized as a sole proprietorship or a partnership, is liable for the full withdrawal liability. Having determined that, the question then becomes one of who can be held responsible for the liabilities of the leasing business. *See Connors v. Ryan's Coal Co.*, 923 F.2d 1461, 1468–69 (11th Cir.1991) (Clark, J., dissenting).

The regulations applicable to § 414(c) of the Internal Revenue Code are applicable in determining what trades or businesses constitute a single employer. *See* 29 U.S.C. § 1301(b)(1); 29 C.F.R. § 2612.2; *United Food & Commercial Workers Union v. Progressive Supermarkets*, 644 F.Supp. 633, 639 (D.N.J.1986). Those regulations include a spousal attribution rule for ownership.[3] Plaintiffs contend this regulation treats Lois Johnson as an owner of the leasing business of her husband regardless of whether she directly owned any portion

---

**3.** Treasury Regulation (26 C.F.R.) 1.414(c)–4(b)(5) provides:

*Spouse—(i) General rule.* Except as provided in paragraph (b)(5)(ii) of this section, an individual shall be considered to own an interest owned, directly or indirectly, by or for his or her spouse, other than a spouse who is legally separated from the individual under a decree of divorce, whether interlocutory or final, or a decree of separate maintenance.

(ii) Exception. An individual shall not be considered to own an interest in an organization owned, directly or indirectly, by or for his or her spouse on any day of a taxable year of such organization, provided that each of the following conditions are satisfied with respect to such taxable year.

(A) Such individual does not, at any time during such taxable year, own directly any interest in such organization;

(B) Such individual is not a member of the board of directors, a fiduciary, or an employee of such organization and does not participate in the management of such organization at any time during such taxable year;

(C) Not more than 50 percent of such organization's gross income for such taxable year was derived from royalties, rents, dividends, interest, and annuities; and

(D) Such interest in such organization is not, at any time during such taxable year, subject to conditions which substantially restrict or limit the spouse's right to dispose of such interest and which run in favor of the individual or the individual's children who have not attained the age of 21 years. The principles of § 1.414(c)–3(d)(6)(i) shall apply in determining whether a condition is a condition described in the preceding sentence.

of that business.[4] Defendant argues this regulation is inapplicable unless she owns a business that is part of the control group. She argues that the regulations are only incorporated into ERISA to define which trades or businesses are part of the control group, not to define which businesses are owned by a particular person. According to defendant, if a person owns a business that is part of the control group, then businesses controlled by that person's spouse are also considered to be part of the control group. Thus, in the present case, businesses owned by Lois Johnson could be attributed to Paul Johnson because he is an owner of the leasing business that is part of the control group. Under defendant's theory, however, there is no proof that Lois Johnson owned any member of the control group and therefore there is no basis for attributing ownership of Paul's business to her. The parties do not dispute that, to the extent the spousal attribution regulation is applicable, Lois Johnson is not excepted because condition (C) of the exception is not satisfied. *See* 26 C.F.R. § 1.414(c)–4(b)(5)(ii)(C).

There is some support for plaintiffs' position. *See Board of Trustees of Western Conference of Teamsters Pension Trust Fund v. Lafrenz*, 837 F.2d 892, 894 (9th Cir.1988); *Central States, Southeast & Southwest Areas Pension Fund v. National Transit Cartage Co.*, No. 88 C 9751 at 6, 1990 WL 179716 (N.D.Ill. Oct. 31, 1990). *See also Pension Benefit Guaranty Corp. v. Ouimet Corp.*, 711 F.2d 1085, 1094 & n. 11 (1st Cir.), *cert. denied*, 464 U.S. 961, 104 S.Ct. 393, 78 L.Ed.2d 337 (1983). *Lafrenz*, however, does not consider the issue raised by defendant because there each spouse had a direct ownership in at least one of the organizations in the control group. *National Transit* simply cites *Lafrenz* and has no discussion of the issue. Therefore, the issue before the court is one of first impression.

■ The spousal attribution regulation serves the purpose of preventing the use of marital property laws to circumvent federal law. *See Lafrenz*, 837 F.2d at 894. As applied to the present case, there is no evidence presented to indicate that Paul Johnson sought to avoid collection on some of his assets by assigning them to the sole ownership of his wife. To the contrary, the evidence only indicates that Lois Johnson has joint bank accounts with her husband. With the possible exception of Lois Johnson's future wages from her employment, there is no source for collection shown that plaintiffs would not be able to pursue if there were only a judgment against Paul Johnson. But even if the purpose is not served in this particular case, there may be a more broadly sweeping prophylactic rule in place to ensure that funds are not diverted to spouses.

In *Connors*, 923 F.2d at 1468–73, Judge Clark argued in dissent that it must first be determined if a particular organization is part of the control group and that, once that is determined, it must then be determined whether an individual's association with that organization results in her being personally liable for that organization's debt.[5] *Id.* at 1468–69. While neither the majority nor the dissent in *Connors* considered the spousal attribution regulation, Judge Clark's approach is the proper one. Nothing is presented by plaintiffs to show that Congress intended that a spouse would be held jointly liable whenever the other spouse was engaged in a leasing business in which the first spouse had no direct interest. The spousal attribution regulation only comes into play to add additional businesses to the control group, not

---

**4.** At least that is what plaintiffs argue in their opening brief. It is unclear if they still make that contention in their reply. At a minimum, they argue that the regulation shows the intent of federal law and that there should be a presumption that a person has an ownership interest in the property of his or her spouse.

**5.** This approach is not inconsistent with the approach taken by the majority. While the ma-

jority does not expound on its holding as fully as the dissent, the principle disagreement between the majority and dissent is that the majority held there was adequate evidence that a partnership existed, 923 F.2d at 1467, whereas Judge Clark held the evidence did not support that a partnership existed, *id.* at 1469–72 (Clark, J., dissenting).

to add additional owners for a business. This view is consistent with 29 C.F.R. § 2612.1 which provides that the "purpose of this part is to prescribe regulations to determine the trades or businesses that shall be treated as a single employer," not that the regulations will prescribe who is the owner of the business. Also, there is no express statutory provision making a person liable for the debts of his or her spouse. Lois Johnson will not be held liable for the withdrawal liability unless it has been shown that she should be held liable for debts of the leasing business, which has been proven to be a member of the control group.

Federal law controls on the issue of who can be held responsible for the debts of a particular business, though state law may be consulted for guidance. *See Evans v. Einhorn*, 855 F.2d 1245, 1255 (7th Cir.1988) (per curiam); *Connors*, 923 F.2d at 1466; *id.* at 1470 (Clark, J., dissenting). Plaintiffs have cited Indiana law that they contend shows that Lois Johnson would have had a marital interest in the building and semi-tractors of Paul Johnson. That, however, is not the issue to focus on. The question is whether a creditor of the leasing business would have a claim against Lois Johnson, not whether Lois Johnson would have any claim against Paul Johnson or a lien on the business's property. In *Connors*, it was held that a wife's partial ownership of the land on which her husband's ranching business was located made her a partner in the ranching business. Here, however, Lois Johnson has no title ownership of any of the property of the leasing business. The titles to the building and the semi-tractors are solely in Paul Johnson's name and Lois Johnson was not involved in the management of the business. Plaintiffs do not point to any precedent holding that purchasing a business out of joint funds and depositing proceeds in a joint account, by themselves, would permit a creditor to pursue a claim against the nonowner of the business who is on the joint account. To the contrary, state law would hold that such facts are insufficient to support liability. *See Bradford v. Bentonville Farm Supply, Inc.*, 510 N.E.2d 745, 747 (Ind.Ct.App.1987); *Zack v. Smith*, 429 N.E.2d 983, 985 (Ind.Ct.App.1982).

That the income and losses of the business were reported on Schedule E of the defendants' joint income tax return is also unavailing. As long as defendants file a joint return, the income would appear on that schedule regardless of whether the leased property is jointly owned or solely held by one spouse. *See Zeeman v. United States*, 395 F.2d 861, 864 (2d Cir.1968). Also, there is no notation on the schedule that the business or property is jointly owned.

Plaintiffs do not present evidence that would support holding Lois Johnson liable for the debts of the leasing business. Therefore, Lois Johnson is entitled to summary judgment on the claim against her.

Plaintiffs shall submit a draft judgment order setting forth the exact amount of Paul Johnson's liability including statutory damages and statutory interest computed to November 13, 1991. The judgment shall also set forth that the Pension Fund is awarded reasonable attorney's fees related to the claim against Paul Johnson. A petition setting forth the amount of attorney's fees shall be presented by motion by December 6, 1991. No time spent on the claim against Lois Johnson shall be included. Prior to moving as to the specific amount of fees, plaintiffs shall discuss the fee request with defendant to determine if the parties can stipulate as to all or some of the reasonable amount of fees. The draft judgment shall also provide that the claim against Lois Johnson is dismissed with prejudice.

IT IS THEREFORE ORDERED that plaintiffs' motion for summary judgment is granted in part and denied in part. Defendant Lois Johnson's motion for summary judgment is granted. Status hearing is set for November 13, 1991 at 9:15 a.m. at which time plaintiffs shall present a draft judgment order as described herein and reserving jurisdiction to consider costs and attorney's fees. Plaintiffs' petition for attorney's fees must be presented by December 6, 1991, conditioned on plaintiffs first

seeking to resolve that issue with defendant Paul Johnson.