CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, a pension trust, and Marion M. Winstead, Robert C. Sansone, Robert J. Baker, Howard McDougall, Arthur H. Bunte, Jr., R. Jerry Cook, R.V. Pulliam, Sr., and Harold D. Leu, the present trustees, Plaintiffs–Appellants,

v.

Lois S. JOHNSON, Defendant–Appellee.

No. 92–1088.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 23, 1992.

Decided April 13, 1993.

Terence G. Craig, Thomas C. Nyhan, James P. Condon (argued), Central States, Southeast & Southwest Area Pension Fund, Law Dept., Rosemont, IL, for plaintiffs-appellants.

Mark A. Jones, Keith C. Hult, Wildman, Harrold, Allen & Dixon, Chicago, IL, Douglas J. Heckler, Michael K. McCrory (argued), Barnes & Thornburg, Indianapolis, IN, for defendant-appellee.

Carol Connor Flowe, Jeffrey B. Cohen, Carol A. Resch, Pension Ben. Guar. Corp., Office of the General Counsel, Washington, DC, amicus curiae.

Before FLAUM and RIPPLE, Circuit Judges, and KAUFMAN, Senior District Judge.*

FLAUM, Circuit Judge.

This case requires us to decide under what conditions an individual may be held liable for pension fund withdrawal liability owed by a spouse, pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. § 1001 *et seq.* We decline to create a rule that one spouse's ownership interest in an unincorporated trade or business will automatically be imputed to the other spouse in order to extend personal liability to him or her. Instead, we hold that both spouses will be liable for a business's unmet pension obligations only when they intended to be partners in that enterprise.

Paul E. Johnson was the owner of several incorporated and unincorporated businesses in the state of Indiana. Johnson owned 100% of the capital stock of Johnco, Inc., which in turn owned 100% of the capital stock of RD Motor Express, Inc., a trucking company. He also owned unrelated companies. In August 1985, Johnson leased to RD Motor a building and a semitractor of which he was the owner of record. Later that year, RD Motor ceased operations entirely.

RD Motor had been subject to a collective bargaining agreement with a Teamster local union under which it was obligated to contribute to the Central States, Southeast and Southwest Areas Pension Fund ("the Fund"). In late 1985, the Fund determined that RD Motor had effected a "complete withdrawal" from the pension plan, *see* 29 U.S.C. § 1383 (1988), and notified RD Motor and Johnco that withdrawal liability was owed in the amount of $334,301.13. Neither RD Motor nor Johnco requested arbitration of this claim, as was their right pursuant to ERISA's dispute resolution mechanism. The Fund won a suit against the companies in 1988, *see Central States, S.E. & S.W. Areas Pension Fund v. Johnco, Inc.*, 694 F.Supp. 478 (N.D.Ill.1988), but they were unable to satisfy the judgment. The Fund then brought the present suit against Paul Johnson and his wife Lois.

The theory of the Fund's suit against Paul Johnson was that he was jointly and severally liable for RD Motor's withdrawal liability on account of his ownership of the unincorporated leasing business. Under MPPAA, all trades or businesses under "common control"—meaning those businesses that share significant ownership by the same people—are treated as constituting a single employer for purposes of determining withdrawal liability. *See* 29 U.S.C. § 1301(b)(1).[1] Thus, if one company incurs withdrawal liability, any other related company in the same "controlled group" assumes joint and several liability for its obligation. The main purpose of this rule is to prevent a business subject to an unfulfilled pension debt from "fractionalizing its operations" or shifting assets to related companies to avoid meeting its financial obligations to the plan. To define the scope of a controlled group, MPPAA looks to certain regulations issued by the Secretary of the Treasury.[2] Under these regulations, two organizations belong to a "brother-sister" group if the same five or fewer

* The Honorable Frank A. Kaufman, Senior District Judge for the District of Maryland, sitting by designation.

1. Section 1301(b)(1) provides:

   An individual who owns the entire interest in an unincorporated trade or business is treated as his own employer.... For purposes of this subchapter, under regulations prescribed by the corporation, all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer. The regulations prescribed under the preceding sentence shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section 414(c) of Title 26.

2. More precisely, MPPAA authorizes the Pension Benefit Guaranty Corporation (PBGC) to issue regulations defining the scope of a controlled group that will be "consistent and coextensive" with these treasury regulations. The PBGC has done so. *See* 29 C.F.R. § 2612.2 (1992). For simplicity, we refer to the treasury regulations themselves.

people own a controlling interest (at least 80% of the stock) in each organization and exercise effective control over both. *See* 26 C.F.R. § 1.414(c)–2(c)(1) (1992).

The district court held that the unincorporated leasing business was under common control with RD Motor and, therefore, jointly and severally liable for the latter's withdrawal liability. *See Central States, S.E. & S.W. Areas Pension Fund v. Johnson*, 778 F.Supp. 425, 428 (N.D.Ill.1991). Because Paul Johnson owned the leasing business, and was not shielded by limited corporate liability, he in turn assumed this obligation. Accordingly, the district court entered summary judgment for the Fund against Paul Johnson. *See id.* at 430. He did not appeal the judgment.

The Fund also named Lois Johnson, Paul's wife, in the suit. One apparent purpose in suing her was to make a claim against the Johnsons' residence in Selma, Indiana. Because the Johnsons own their home as tenants by the entirety, the property is insulated against all but joint creditors.[3] *See* Brief of Plaintiffs–Appellants at 6–7, 18. The evidence of Lois Johnson's involvement in her husband's business affairs was inconclusive. She submitted an affidavit stating that she did not participate in the management or control of any of Paul's business concerns, including the leasing business. She admitted that she accompanied Paul to RD Motor's offices on weekends and holidays, but only to knit or do needlepoint, and occasionally to file papers; she stated that she never received compensation for these activities. The district court found that the money used to purchase the building and semi-tractor leased to RD Motor came out of joint bank accounts maintained by Paul and Lois. It also found that the rental income produced by these leasing activities was deposited into joint accounts, and that the Johnsons claimed deductions from their combined gross income on their joint federal tax return, based on losses from the leasing activities.

The Fund argued that Lois Johnson was liable for her husband's pension obligations under another of the treasury regulations to which ERISA looks to define the contours of a controlled group, called the spousal attribution regulation, 26 C.F.R. § 1.414(c)–4(b)(5) (1992). This regulation provides that "an individual shall be considered to own an interest owned, directly or indirectly, by or for his or her spouse." *Id.* The Fund contends that the spousal attribution rule requires us to impute Paul's ownership of the unincorporated leasing business to Lois, and therefore to find her jointly liable for the withdrawal obligation.

The Fund, however, misapprehends the function of the spousal attribution regulation. As the last sentence of ERISA section 1301(b)(1) explains, the treasury regulations come into play only to identify which businesses should be treated as forming a controlled group. The spousal attribution rule counts both spouses as one person to determine whether multiple businesses share the same owner. For example, if the husband owns 100% of business *A* and the wife owns 100% of business *B*, the regulation attributes the wife's ownership interest in *B* to her husband. Then business *A* and business *B* are considered owned by the same person, and hence part of the same controlled group. (The effect is the same if the husband's ownership of business *A* is attributed to the wife.) The purpose of the regulation is to prevent a couple from shifting marital property between the two spouses in order to defeat controlled group liability. *See Western Conference of Teamsters Pension Trust*

---

3. We express no view as to whether some of the Johnsons' personal property may be exempted from enforcement of this withdrawal liability under 29 U.S.C. § 1405(c) (1988). While some courts have held that this limitation applies whether the unincorporated business was obligated to contribute to a pension fund in the first instance or was merely under common control with such a business, *see, e.g., Western Confer-*

*ence of Teamsters Pension Trust Fund v. H.F. Johnson, Inc.*, 830 F.2d 1009, 1015 (9th Cir. 1987), commentators have criticized this reading of the statute. *See* Israel Goldowitz & Thomas S. Gigot, *The Controlled Group Rule for Purposes of the Withdrawal Liability Provisions of the Employee Retirement Income Security Act*, 90 W.Va.L.Rev. 773, 798–801 (1988).

*Fund v. Lafrenz,* 837 F.2d 892, 894 (9th Cir.1988).

In this case, the spousal attribution regulation prescribes that business interests owned by Lois Johnson should be lumped with those interests owned by Paul Johnson to determine the scope of the controlled group. Since Lois does not own any businesses on her own, the attribution rule has no effect here. The regulation does not state that one spouse's interests should be imputed to the other for the purpose of extending personal liability to him or her. As the district court correctly put it, "[t]he spousal attribution regulation only comes into play to add additional businesses to the control group, not to add additional owners for a business." *Johnson,* 778 F.Supp. at 429–30. This reading finds support in the PBGC's regulations, which describe their own purpose as "to determine the trades or businesses that shall be treated as a single employer for purposes of title IV of [ERISA]." 29 C.F.R. § 2612.1(a) (1992). Accordingly, the spousal attribution rule does not apply to the Johnsons' situation.[4]

Thus, we approach the question of whether (and when) one spouse may be held liable for unmet pension obligations accruing to the other spouse without the benefit of enacted law. We must consider as a matter of federal common law whether Lois Johnson should be held personally liable for her husband's unfulfilled debts. *See Western Conference of Teamsters Pension Trust Fund v. H.F. Johnson, Inc.,* 830 F.2d 1009, 1014 (9th Cir.1987) ("Congress 'intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans.'" (quoting 120 Cong.Rec. 29942 (1974) (remarks of Sen. Javits)). In

formulating a rule to govern this situation, we must be mindful of the federal policies and goals underlying ERISA and MPPAA.

The Fund argues that even if the spousal attribution regulation does not apply of its own force in the personal liability context, the principles and policies behind it should convince us to impute Paul Johnson's ownership of the leasing business to Lois. The Fund maintains that just as spouses might juggle their ownership interests in business entities to avoid controlled group liability, so too might they register assets in each other's names to defeat efforts of pension plans to collect judgments against them. In this case, the Fund evidently fears that Paul Johnson, with or without the active assistance of Lois, took advantage of the rules of Indiana property law (especially tenancy by the entirety) to shield his own assets from collection. Thus, it seeks to hold Lois Johnson jointly and severally liable for Paul's debts.

We believe, however, that the Fund's proposed rule would take us out on a limb too far from MPPAA's trunk. Congress has given no signal, express or implicit, that it intends to hold one spouse automatically liable for withdrawal liability incurred by the other. MPPAA was enacted to counter misuse of the corporate form for the purpose of evading withdrawal liability; it was not concerned with the more subtle problem of how to recover assets hidden by individuals to minimize their personal exposure. Although "Congress did not preclude the possibility of individual liability under MPPAA," *H.F. Johnson,* 830 F.2d at 1014, it also did not design a broad scheme of attaching personal liability in all cases where pension debts go unsatisfied. Congress did not, for example, generally authorize pension funds to disregard the corpo-

---

**4.** A footnote in our recent decision in *Central States, S.E. & S.W. Areas Pension Fund v. Ditello,* 974 F.2d 887 (7th Cir.1992), has created some confusion about this point. In *Ditello,* the Central States Pension Fund pursued Angelo and Jean Ditello for withdrawal liability incurred by National Transit Cartage Company, because National Transit was under common control with an unincorporated real estate leasing business that the Ditellos owned. In the course of affirming the entry of summary judgment for the

Fund, we noted that in reality only Angelo, not Jean, owned the real estate proprietorship. We explained that this fact was irrelevant, however, because MPPAA attributes Angelo's interest to Jean. *See id.* at 891 n. 1. That statement does not support the Fund's argument that the spousal attribution rule creates personal liability for a spouse. We had no occasion in *Ditello* to consider the question of Jean Ditello's personal liability for the debts of her husband, since she did not raise the argument.

rate form and hold shareholders directly responsible for unfulfilled ERISA obligations. *See, e.g., Plumbers' Pension Fund Local 130 v. Niedrich,* 891 F.2d 1297, 1300–01 (7th Cir.1989), *cert. denied,* 495 U.S. 930, 110 S.Ct. 2169, 109 L.Ed.2d 499 (1990); *Levit v. Ingersoll Rand Fin. Corp.,* 874 F.2d 1186, 1193 (7th Cir.1989). *But see Alman v. Danin,* 801 F.2d 1 (1st Cir.1986). *See generally* Wilson McLeod, *Shareholders' Liability and Workers' Rights: Piercing the Corporate Veil Under Federal Labor Law,* 9 Hofstra Lab. L.J. 115, 164–73, 209–11 (1991) (arguing for greater piercing of the corporate veil in withdrawal liability contexts).

In federal law, as a general matter, one spouse is rarely held responsible for the other's obligations. Federal tax law is one of the few areas where joint liability for spouses does exist. If a husband and wife file a joint tax return, liability for the tax on their aggregate income is joint and several. *See* I.R.C. § 6013(d)(3) (1988). Unlike the situation here, however, that rule has been part of codified law for over fifty years, with origins even earlier. *See generally* Richard C.E. Beck, *The Innocent Spouse Problem: Joint and Several Liability for Income Taxes Should be Repealed,* 43 Vand.L.Rev. 317, 332–47 (1990) (recounting the history of the rule). The PBGC, which accepted our invitation to file an *amicus* brief in this case, states that "[o]utside of the ERISA context, the federal common law generally holds the spouse of a proprietor or partner liable for the partner's or proprietor's debts only if some inculpating agency or partnership relationship is demonstrated." Brief of Amicus Curiae Pension Benefit Guaranty Corporation at 11.[5]

There is another reason not to analogize from the controlled group setting to the personal liability setting. The spousal attribution regulation comes into play only when each spouse owns a significant interest in one or more businesses. Such individuals may be presumed to be sophisticated about federal law in general and ERISA in particular. It is not unfair or unreasonably burdensome to require each of these spouses to monitor the other's pension-related business affairs, at risk of watching his or her companies be dragged down by withdrawal liability should the other's sink first. That, anyway, is part of the justification for applying the attribution rule in that context. But the dynamics between spouses in the average situation calling for *personal* liability may be entirely different. If one spouse owns all of the companies in the controlled group, there is no basis to assume that the other could have known of the possibility of his or her personal liability. This "innocent" spouse may have been completely uninvolved in the other's business activities and unsophisticated about legal matters. Such possibilities counsel strongly against holding the non-owner spouse liable for the owner's pension obligations simply on account of being married, without more evidence of involvement in the activities that gave rise to the liability.

■ This objection suggests a better approach to the problem of determining when spouses should be held jointly liable for withdrawal liability of an unincorporated business. Courts have held that business partners or joint venturers must share withdrawal liability of companies that they own. *See, e.g., H.F. Johnson,* 830 F.2d at 1015 (personal liability for joint venturers); *United Food & Commercial Workers Union v. Progressive Supermarkets,* 644 F.Supp. 633, 642 (D.N.J.1986) (personal liability for partners). The same principle should apply when spouses are business partners. The Eleventh Circuit, in fact, applied partnership concepts in a situation similar to this one in *Connors v. Ryan's Coal Co.,* 923 F.2d 1461 (11th Cir.1991). *Connors* was the case of a married couple, George and Janice Simmons, who owned

---

**5.** As we noted on another occasion, "[t]he PBGC's views are entitled to deference because of its responsibility to enforce Title IV of ERISA, 29 U.S.C. §§ 1301–1461 (which includes ERISA's withdrawal liability provisions)." *Trustees of Iron Workers Local 473 Pension Trust v. Allied Prods. Corp.,* 872 F.2d 208, 210 n. 2 (7th Cir.) (citation omitted), *cert. denied,* 493 U.S. 847, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989).

interests in several related coal-mining enterprises. When one of those companies, Ryan's Coal, defaulted on its pension obligations to the United Mine Workers Pension Plan, the trustees of the Plan brought actions against the other businesses and the Simmonses themselves. The district court held George Simmons liable based on his ownership of a business under common control with Ryan's Coal, and it held Janice Simmons liable based on her partnership interest in a cattle farm jointly owned with her husband. Janice alone appealed the decision, contending that her involvement in the cattle farm was not so extensive as to justify saddling her with joint liability for the withdrawal amount as a partner in the enterprise.

The Eleventh Circuit held that the question of whether Janice was a partner in the cattle farm business was ultimately one of federal law. Borrowing a test from the Supreme Court's decision in *Commissioner v. Culbertson*, 337 U.S. 733, 744–45, 69 S.Ct. 1210, 1215–16, 93 L.Ed. 1659 (1949), in which the Court clarified when a family business qualifies as a partnership for tax purposes, it proposed the following standard:

> If, upon a consideration of all the facts, it is found that the partners joined together in good faith to conduct a business, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient [to find a partnership existed]. The true focus of the inquiry must be on whether the alleged partners really and truly intended to join together in the present conduct of the enterprise. Their intention in this respect is a question of fact, and may be determined with reference to an express agreement or from the cir-

cumstances surrounding the purported partnership arrangement.

*Connors*, 923 F.2d at 1466–67 (quotation and citations omitted). The court recognized that the Simmonses had not executed a formal partnership agreement. Nevertheless, it approved the district court's decision that a partnership existed on the basis of two main factors. First, the cattle farm operation paid property taxes and made mortgage payments on farm land owned jointly (although in different shares) by the two Simmonses. Second, George and Janice Simmons took those payments as deductions on their joint tax return. The court acknowledged that co-ownership of property without more does not create a partnership. But it found that the facts in this case—especially the sharing of business profits and losses—supported a determination that George and Janice Simmons intended to be partners.

■ We believe the *Connors* test, grounded in the intent of the marital couple, appropriately serves ERISA's aim of "prevent[ing] the great personal tragedy suffered by employees whose vested benefits are not paid when pension plans are terminated," *Nachman Corp. v. PBGC*, 446 U.S. 359, 375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980), without running roughshod over the property rights of the potentially "innocent" spouse. If that spouse knowingly joined the undertaking that ultimately incurred the withdrawal liability, then he or she should be jointly and severally liable for that assessment.[6]

Before the district court, the Fund proffered several pieces of evidence indicating that Lois Johnson intended to form a partnership with her husband. The property of the leasing business was purchased out of funds jointly owned by the Johnsons; the rental income produced by the business went into joint accounts; losses from the business were taken as deductions from

---

**6.** One other situation merits discussion. If the Fund can prove that Paul Johnson transferred personal assets to Lois in order to avoid withdrawal liability, then it should be able to recover those amounts from her without recourse to any doctrine developed here. Without wishing to pass on a difficult question involving ERISA preemption, we observe merely that relief from such a transfer is already available, whether under MPPAA (*see* 29 U.S.C. § 1392(c) (1988) ("If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction.")) or under *state* fraudulent conveyance law.

the couple's joint income tax return; Lois Johnson, by her own admission, performed an undetermined amount of clerical or administrative work at her husband's office; and the Johnsons each held a 50% interest in another corporation known as Paul's Cartage, Inc.[7] The district court, nevertheless, stated that there was no precedent for holding that purchasing a business out of joint funds and depositing the proceeds in a joint account permits a creditor to pursue a claim against the non-owner of the business who is on the joint account. It cited two Indiana cases, *Bradford v. Bentonville Farm Supply, Inc.*, 510 N.E.2d 745, 747 (Ind.Ct.App.1987) and *Zack v. Smith*, 429 N.E.2d 983, 985 (Ind.Ct.App.1982), as holding that such facts were insufficient to support liability. Additionally, the fact that the income and losses of the businesses were reported on the Johnsons' joint tax return did not prove the existence of a partnership, the court determined, since the income would appear there regardless of whether the leased property were jointly owned or solely held by one spouse. *See Zeeman v. United States*, 395 F.2d 861, 864 (2d Cir.1968). In light of these findings, and the fact that Lois Johnson submitted an affidavit denying any intention to form a partnership with her husband, the court granted summary judgment in favor of Lois Johnson.

We believe that this factual situation calls for the same analysis as *Connors*. The district court believed the cases were different, because here Lois Johnson, unlike Janice Simmons, had no title ownership of any property of the leasing business. The court recognized that the purchase of the leased property out of joint funds means that Lois Johnson would have a legal claim against Paul for her rightful share of that property. But it reasoned that since Lois was not the owner of record, no creditor would have a claim against her. Hence, it concluded, the Fund, too,

should not be able to recover from her. The district court's logic relies too heavily on the rules of Indiana property law, without paying sufficient deference to the interests of ERISA and MPPAA. The fact that a creditor could not pursue Lois Johnson under Indiana law should not determine whether a pension fund can collect from her under ERISA. *Connors* is premised on flushing out the true intentions of the married couple to pursue business activities together. If that test depended on who is shown as owner of record, it would be easy to protect one spouse simply by listing all business property in the other's name. Once the spouses decide to contribute their marital property to a joint undertaking, the fact that one spouse is not listed as record owner of a piece of leasing property should not preclude a finding of partnership.

Even if Indiana law were dispositive of this issue, the cases cited by the district court cannot support its result. *Zack* held that one spouse is not liable for loans undertaken by the other. *Bradford* held that co-tenancy of a farm and the sharing of profits and losses it generates does not, without more, establish the existence of a partnership between spouses. In this case (and, indeed, in *Bradford* too) there was additional evidence tending to show partnership—Lois Johnson's clerical work for Paul and their joint ownership of the other business. The one federal case the district court cited cannot support the decision either. *Zeeman*, which posed the question of whether a widow may carry back a loss against joint marital income of a previous year, stated that "the privilege of filing joint tax returns given to married couples is something less than a merger of them into a permanent, single economic unit." *Id.* at 864. It did not address whether taking deductions on a joint tax return for losses from a business may be probative of the existence of a partnership.

7. The district court's memorandum and order did not mention this piece of evidence, which suggests a pattern of involvement by Lois Johnson in her husband's business affairs. *Cf. Connors*, 923 F.2d at 1467–68. Before this court, Lois complains that evidence of this other business is outside the record, and therefore cannot

be considered. We do not understand how she can raise such an objection, when she herself put these facts into the record before the district court. *See* Defendants' Memorandum in Reply to Plaintiffs' Motion for Summary Judgment, Ex. A at 4–6 (Paul Johnson Dep.).

■ Under the *Connors* test, the central issue in this case is Lois Johnson's intent to form a partnership with her husband. As we have noted before, summary judgment continues to be " 'notoriously inappropriate' where intent [is] at issue." *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 371 (7th Cir.1992) (citation omitted). The moving party is entitled to summary judgment when "the nonmovant has failed to come forward with even circumstantial evidence from which a jury could reasonably infer the relevant state of mind." *Corrugated Paper Prods., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir.1989). That was hardly the case here. The nonmoving party (the Fund)[8] proffered considerable evidence tending to show that a partnership existed. On the other hand, the moving party (Lois Johnson) relied only on a self-serving conclusory denial that she intended to form a partnership with Paul. The fact that Lois Johnson failed to "exercise control" over the leasing business is unrevealing. Since that business's principal tenant was another business entirely owned by Paul Johnson, there was likely little control exercised by anyone. On the whole, we believe a genuine issue of material fact existed concerning Lois Johnson's intent to form a partnership with Paul.

We conclude that the district court should not have granted summary judgment to Lois Johnson. The central question of the case on remand will be whether she intended to form a partnership with her husband in running the leasing business. Accordingly, the entry of summary judgment is VACATED and the case REMANDED for further proceedings consistent with this opinion.

---

8. Lois Johnson never formally moved for summary judgment; she requested it in response to the Fund's own summary judgment motion. Nevertheless, since the district court entered summary judgment in her favor, we treat her as the moving party, and the Fund as the nonmoving party.