**PENSION BENEFIT GUARANTY CORPORATION, Plaintiff–Appellee,**

v.

**Donald R. BEVERLEY; Martha H. Beverley, Defendants–Appellants,**

and

**Don's Trucking Company, Incorporated, Defendant.**

No. 04–1371.

United States Court of Appeals, Fourth Circuit.

April 12, 2005.

Argued: Nov. 30, 2004.

Decided: April 12, 2005.

**ARGUED:** Paul McCourt Curley, Canfield, Baer, Heller & Johnston, L.L.P., Richmond, Virginia, for Appellants. Merrill D. Boone, Pension Benefit Guaranty Corporation, Office of the General, Washington, D.C., for Appellee. **ON BRIEF:** Robert Allen Canfield, Canfield, Baer, Heller & Johnston, L.L.P., Richmond, Virginia, for Appellants. James J. Keightley, General, William G. Beyer, Deputy General, Karen L. Morris, Assistant General, Pension Benefit Guaranty Corporation, Office of the General, Washington, D.C., for Appellee.

Before TRAXLER, GREGORY, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge GREGORY wrote the opinion, in which Judge TRAXLER and Judge DUNCAN joined.

GREGORY, Circuit Judge:

This case involves Pension Benefit Guaranty Corporation's ("PBGC" or "plaintiff") claims of unfunded benefits liability under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1362(a) and (b), which stems from the termination of Don's Trucking Company Defined Benefit Pension Plan (the "Plan"). PBGC filed a complaint against the Plan's sponsor, Don's Trucking Company ("Don's Trucking"), claiming that members of Don's Trucking's controlled group, including Donald R. Beverley ("Don Beverley" or "Mr. Beverley") and Martha H. Beverley ("Martha Beverley") (collectively "the Beverleys" or "defendants"),[1] and the alleged partnership between the Beverleys, were liable for the unfunded benefits under ERISA. The Beverleys appeal the district court's order granting PBGC's motion for summary judgment. Defendants raise several issues on appeal, however, finding no error, we affirm the district court.

I.

Don's Trucking established the Plan, effective June 1, 1988, to provide retirement benefits to its employees. The Beverleys own Don's Trucking and each serve as two of the three officers and directors of the company. Don's Trucking was the administrator and contributing sponsor of the Plan.

Since the 1980s the Beverleys have also owned certain properties, 1801 Coxendale Road and 1811 Coxendale, in Chester, Virginia ("Coxendale Properties"). Since purchasing the Coxendale Properties the Beverleys have leased part of the properties to Don's Trucking and occasionally have leased part of the properties to other tenants.

PBGC is a wholly-owned United States government corporation, established under 29 U.S.C. § 1302(a) to administer the pension plan termination insurance program created by ERISA, codified at 29 U.S.C. §§ 1301–1461 (2000 & Supp. I 2001) ("Title IV").[2] PBGC assures the timely payment of guaranteed pension benefits to participants in pension plans that terminate when covered by Title IV. *See* 29 U.S.C. §§ 1302(a)(2), 1321, 1322 (2004).

By agreement between PBGC and Don's Trucking, the Plan was terminated in August 1997, with insufficient assets. *See* 29 U.S.C. § 1342. Subsequently, as statutory trustee, PBGC sued Don Beverley as the Plan fiduciary for improper transfers of Plan assets ("fiduciary liability suit") pursuant to 29 U.S.C. § 1109.[3] In April 2001, PBGC obtained a judgment against Don Beverley in the amount of $358,044.40 plus post judgment interest. Don Beverley has not satisfied the judgment against him.

PBGC filed a civil action against Martha Beverley and Don Beverley, individually,

---

1. Don and Martha Beverley are married and have been during the relevant times of this case.

2. The United States Code, Subchapter III of Chapter 18 of Title 29 refers to "this title" as Title IV of ERISA. For the sake of brevity we will follow suit.

3. 29 U.S.C. § 1109 provides in relevant part: (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.
*Id.*

the alleged Beverley Partnership, and Don's Trucking in United States District Court for the Eastern District of Virginia. PBGC asserted that Don's Trucking as contributing sponsor was liable to PBGC under 29 U.S.C. § 1362(a)-(b)[4] ("employer liability"). *See* 29 U.S.C. § 1362 (providing that employer liability springs from plan termination). PBGC also alleged that there was a general partnership between Don Beverley and Martha Beverley for the primary purpose of leasing real estate ("Beverley Partnership"). Thus, PBGC argued, under § 1362, that Don's Trucking, as contributing sponsor, and the Beverley Partnership, as the sponsor's controlled group, were jointly and severally liable to PBGC for employer liability. PBGC also claimed that, as the general partners of the Beverley Partnership, Don Beverley and Martha Beverley are jointly and severally liable for its debts, including employer liability to PBGC. *See id.*

On cross-motions for summary judgment[5] the district court granted PBGC's motion and denied the Beverleys' motion. The district court awarded judgment to PBGC jointly and severally against each defendant in the amount of $366,181.51, plus interest minus any monies actually recovered on the fiduciary liability judgment. The Beverleys timely filed this appeal.

## II.

We review a district court's summary judgment ruling *de novo*, viewing the evidence in the light most favorable to the losing party. *Goldstein v. The Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 340 (4th Cir.2000); *Binakonsky v. Ford Motor Co.*, 133 F.3d 281, 284–85 (4th Cir. 1998). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. Rule 56 also states that "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves").

Rule 56(e) also requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.' " 10B Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2740, at 399 (1998). Once the movant has established the absence of any genuine issue of materi-

---

**4.** 29 U.S.C. § 1362 provides that:

In any case in which a single-employer plan is terminated .... under section 29 U.S.C. § 1342, any person who is, on the termination date, a *contributing sponsor of the plan or a member of such a contributing sponsor's controlled group* shall incur liability under this section. The liability under this section of all such persons shall be joint and several.

*Id.* (emphasis added).

**5.** The alleged Beverley Partnership did not answer or otherwise defend the Complaint. A default judgment was entered by the district court against the Beverley Partnership on January 15, 2004.

al fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact. *See Pine Ridge Coal Co. v. Local 8377, UMW.* 187 F.3d 415, 422 (4th Cir.1999).

### III.

The Beverleys contend that the district court erred when it concluded that the doctrines of res judicata and election of remedies did not bar PBGC's claim against Don Beverley. Defendants also argue that the district court erred in concluding that Martha Beverley intended to form a partnership with Don Beverley for the purpose of leasing the Coxendale Properties. We will address each of defendants' claims in turn.

### A.

■ To analyze defendants' res judicata claim we must first review the origin and principal purpose of the PBGC. Congress created the PBGC with one central purpose—"to prevent 'great personal tragedy' suffered by employees whose vested benefits are not paid when pension plans are terminated." *Pension Benefit Guar. Corp. v. Carter & Tillery Enters.*, 133 F.3d 1183, 1186 (9th Cir.1998) (quoting *Nachman Corp. v. PBGC*, 446 U.S. 359, 374, 100

S.Ct. 1723, 64 L.Ed.2d 354 (1980)). PBGC is funded primarily through premiums paid by pension-plan sponsors. PBGC is mandated by statute to maintain such premiums "at the lowest level" consistent with Title IV's purposes. *See* 29 U.S.C. § 1302(a)(3). PBGC carries out this mandate by enforcing the various claims provided to PBGC under Title IV.

When a pension plan terminates with insufficient assets to fund the benefits it has promised to pay, Title IV imposes joint and several liability on the plan's contributing sponsor and each member of the sponsor's "controlled group." 29 U.S.C. § 1362(a).[6] A "controlled group" is a group of trades or businesses related by common ownership, determined under regulations prescribed by the Secretary of the Treasury. 29 U.S.C. § 1301(a)(14)(A) and (B). In its *corporate capacity*, PBGC has a claim against the controlled group for the total amount of the Plan's unfunded benefit liabilities to all participants and beneficiaries, as of the Plan's termination date, together with interest from the termination date—employer liability. *See* 29 U.S.C. § 1362(b)(1).[7]

As provided by statute, PBGC may and typically does seek to be appointed as *statutory trustee* of plans that terminate with insufficient assets. 29 U.S.C. § 1342(b)(1).

---

**6.** 29 U.S.C. § 1362(a) provides:

(a) In general. In any case in which a single-employer plan is terminated in a distress termination under ... 29 U.S.C. § 1341(c) or a termination otherwise instituted by the corporation under ... 29 U.S.C. § 1342, any person who is, on the termination date, a contributing sponsor of the plan or a member of such a contributing sponsor's controlled group shall incur liability under this section. The liability under this section of all such persons shall be joint and several. The liability under this section consists of—(1) liability to the corporation ... and (2) liability to the trustee.

*Id.*

**7.** 29 U.S.C. § 1362(b) provides:

Liability to corporation. (1) Amount of liability. (A) In general .... the liability to the corporation of a person described in subsection (a) shall be the total amount of the unfunded benefit liabilities (as of the termination date) to all participants and beneficiaries under the plan, together with interest (at a reasonable rate) calculated from the termination date in accordance with regulations prescribed by the corporation. *Id.*

As statutory trustee, PBGC may assert claims on behalf of the plan, 29 U.S.C. § 1342(d)(1)(B)(ii), against its fiduciaries based on breaches of their fiduciary duty, 29 U.S.C. § 1109(a), such as improper transfers of plan assets. 29 U.S.C. § 1106.

Don Beverley argues that the district court erroneously held that PBGC obtained its prior judgment against him in its representative capacity as Plan trustee, in contrast to the second action in which PBGC filed its lawsuit against defendants in its corporate capacity.[8] Mr. Beverley alleges that it was an established fact that PBGC had previously obtained a judgment on the merits against him stemming from the same transaction or series of transactions, thus the second suit was barred by res judicata. In addition, Mr. Beverley contends that the district court illogically granted him a credit for any amounts recovered by PBGC in the fiduciary liability judgment, which in his estimation is in direct contradiction to the district court's ruling concerning identity or privity of parties. Don Beverley avers that the "credit" was granted by the district court to counteract the application of the election of remedies doctrine. Mr. Beverley argues that the "election of remedies doctrine ... is applied [to], among other things, ... prevent double recovery." J.A. 7.

To establish res judicata we have held that "a party must establish: '(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3)

an identity of parties or their privies in the two suits.'" *Jones v. S.E.C.*, 115 F.3d 1173, 1178 (4th Cir.1997) (quoting *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir.1991)). The first element is easily satisfied and the parties do not dispute it. The district court was correct in its conclusion that the second element was established. There is no dispute that PBGC actually knew of its employer liability claim when it was litigating the fiduciary liability suit. Thus, our holding in *Meekins* applies to this case; *Meekins* stated that:

> [t]he preclusive affect of a prior judgment extends beyond claims or defenses actually presented in previous litigation, for not only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.

946 F.2d at 1057. Therefore, although PBGC's claims are separate and independent, the employer liability claim under 29 U.S.C. § 1362(a)-(b), was previously available and could have been brought in the fiduciary liability suit. Consequently, this court finds that the second element of res judicata has been met.

Regarding the third element—identity of parties or their privies in the two suits—Mr. Beverley attempts to distinguish the facts and our holding in *Andrews v. Daw*, 201 F.3d 521, 523 (4th Cir.2000)[9]

---

8. The district court held that "[d]efendants have established a final judgment on the merits in the prior suit, and identity of claims, [however,] they fail to meet the identity of parties or privies element of res judicata." J.A. 346.

9. In *Daw*, the plaintiff sued several defendants under 42 U.S.C. § 1983 (West Supp. 1999) alleging that his rights were violated

during a traffic stop by one of the defendants—a police officer. As for the officer, the lower court dismissed, and we affirmed, because he was sued in his official capacity and thus was shielded from money damages under the Eleventh Amendment. *Id.* at 523. Plaintiff filed a second § 1983 complaint against the officer in the officer's individual capacity. *Id.* at 524. The lower court grant-

from this case. He argues that in the fiduciary liability suit PBGC, as the plaintiff, sued him "in its own name," as the Plan trustee, for the benefit of the plan and its participants and beneficiaries. Appellants' Br. at 12. Here, Don Beverley contends that PBGC has sued him once again in its own name, not as Plan trustee, but still for the purpose of recovering funds for the benefit of the Plan participants and beneficiaries. According to Mr. Beverley, "[w]hether PBGC acts as a plan trustee or on its own, the purpose is still the same to benefit plan participants and beneficiaries." Appellants' Br. at 12. In contrast, Mr. Beverley avers that it was the defendant police officer, a government official, who was sued first in his official capacity and then sued again in his individual capacity. Thus, *Daw* does not apply.

■ Regardless of whether PBGC's underlying purpose is the same in each suit, our holding in *Daw* and the rule of "differing capacities" makes clear: "[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." *Daw,* 201 F.3d at 525; *see also* Restatement (Second) of Judgments, § 36 (1982). As we articulated in *Daw,* "the rationale for this rule is that 'in appearing as a representative of another, a person should be free to take positions inconsistent with those he might assert in litigation on his own behalf or on behalf of others he repre-

sents in some fiduciary capacity.'" 201 F.3d at 525 (internal citations omitted).

The record is clear and undisputed, PBGC, as the trustee of the Plan, filed its statutorily provided fiduciary liability claim against Don Beverley, to recover the amounts owed to the Plan. In addition, PBGC in its corporate capacity, has a statutorily provided claim against the controlled group, i.e. the employer liability claim for the total amount of the Plan's unfunded liabilities.[10] The fact that PBGC has a beneficent purpose in both of its capacities, is no basis for an exception to the rule. Although PBGC may request and often does request that it be appointed as a statutory plan trustee pursuant to 29 U.S.C. § 1342(b)(1), a third party may also be appointed as statutory plan trustee. A third party would also be required to act for the purpose of benefitting plan participants and beneficiaries, however the third party would not be in privity with PBGC in its corporate capacity. Consequently, we can not find that PBGC is in privity with itself when it acts as the Plan's statutory trustee in pursuing fiduciary liability and subsequently, acts in its corporate capacity, in asserting the Plan's claim for termination and unpaid contributions. Accordingly, the rule of "differing capacities" applies and the identity or privity of the parties was not established.

### B.

■ The Beverleys contend that election of remedies also bars PBGC's claims.

---

ed the officer's motion to dismiss on the ground that the action was barred by the doctrine of res judicata. *Id.* On appeal, we reversed and remanded because *the officer in his official capacity did not represent precisely the same legal right as he did in his individual capacity.* *Id.* at 526 (emphasis added). Further, we held that the officer in his official capacity was not in privity with himself in his individual capacity for purposes of res judicata. *Id.*

**10.** It is also important to note that Congress did not require PBGC or any other statutory trustee to bring § 1109 claims in the same suit as § 1362 claims. In addition, there were practical concerns: PBGC averred in oral argument that the statute of limitations was running out on their fiduciary liability claim against Don Beverley.

They argue that it was "legally inconsistent [for the district court] to hold that PBGC was acting in differing capacities for the purposes of res judicata, yet for the election of remedies doctrine, PBGC was acting in the same capacity or was at the very least, in privity with itself enough to have to give Don Beverley a credit." Appellants' Br. at 14.

What the district court actually found was that the election of remedies doctrine did not apply and was not required to prevent a double recovery. Accordingly, the district court structured a judicial remedy to avoid such a windfall—it ordered that the judgment awarded in the second case to be offset by any actual recovery from the prior suit.

 The doctrine of election of remedies "refers to situations where an individual pursues remedies that are legally or factually inconsistent." *Artis v. Norfolk & Western Railway Company*, 204 F.3d 141 (4th Cir.2000). As PBGC contends, the doctrine requires a plaintiff to make an election between seeking rescission of a contract and damages for breach of the contract. *Winant v. Bostic*, 5 F.3d 767, 776 (4th Cir.1993). However, such is not the case here. Sections 1109 and 1362 allow for independent claims to be asserted when a plan's fiduciary duty has been breached and when the plan has been terminated with insufficient funds. "It must be remembered that the purpose of the statute is not to bail out the employer, but to protect the plan participants." *Pension Ben. Guaranty Corp. v. Alloytek, Inc.*, 924 F.2d 620, 626 (6th Cir.1991). The "credit" the district court created was to prevent double recovery, while still enforcing the intent of Congress in allowing the independent liabilities and judgments to be pursued. *Alexander v. Gardner–Denver Co.*,

415 U.S. 36, 51, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (acknowledging that the doctrine of election of remedies need not be invoked to prevent a party from recovering more than it is entitled to recover). A finding that the doctrine of election of remedies bars recovery in this case would be misplaced.

### C.

 The Beverleys claim that the district court erroneously held that Martha Beverley intended to form the alleged Beverley Partnership with her husband, for the leasing of their jointly owned real property[11] to Don's Trucking despite insufficient facts to prove Martha Beverley's intent to form any alleged partnership. Thus, defendants claim that extending employer liability to Martha Beverley personally is inappropriate. PBGC contends that the district court correctly found that Martha Beverley and Don Beverley were partners in the leasing business, an unincorporated trade or business in the controlled group of Don's Trucking, and as such were jointly and severally liable with Don's Trucking for employer liability.

Generally, in federal law, one spouse is rarely held responsible for the other's obligations. However, courts have held that business partners or joint venturers must share withdrawal liability of companies that they own. *See, e.g., Board of Trustees of Western Conference of Teamsters Pension Trust Fund v. H.F. Johnson Inc.*, 830 F.2d 1009, 1015 (9th Cir.1987) (personal liability for joint venturers); *see also United Food & Commercial Workers Union v. Progressive Supermarkets*, 644 F.Supp. 633, 642 (D.N.J.1986) (personal liability for partners). Thus, partners are not insulated merely by being married.

---

11. When a husband and wife own property as tenants by the entirety, the property is insulated against all but joint creditors. *Central States*, 991 F.2d at 389.

*See Central States, Southeast & Southwest Areas Pension Fund v. Johnson,* 991 F.2d 387, 391 (7th Cir.1993). Since we have never addressed this issue, we look to the Seventh Circuit's opinion, *Central States,* for guidance.

In *Central States* the court applied a test used in *Connors v. Ryan's Coal Co.,* 923 F.2d 1461 (11th Cir.1991), which considers the intent of the marital couple to determine if the couple had a partnership. In *Connors,* the married couple, George and Janice Simmons, owned interests in several related coal-mining enterprises. When one of those companies, Ryan's Coal, defaulted on its pension obligations to the United Mine Workers Pension Plan, the trustees of that plan brought actions against the other businesses and the Simmonses themselves. The district court held that George Simmons was liable based on his ownership of a business under common control with Ryan's Coal, and that Janice Simmons was liable due to her partnership interest in a cattle farm owned jointly with her husband. Janice appealed the decision, contending that her involvement in the cattle farm was not so significant as to justify holding her "jointly liable for the withdrawal amount as a partner in the business." *Connors,* 923 F.2d at 1464.

▪ Whether Janice was a partner in the cattle business was ultimately a question of federal law.[12] *Id.* at 392 ("We must consider as a matter of federal common law whether [a wife] should be held personally liable for her husband's unfulfilled debts"); *see also H.F. Johnson, Inc.,* 830 F.2d at 1014 ("Congress 'intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans.' ") (quoting

120 Cong. Rec. 29942 (1974) (remarks of Sen. Javits)). The court acknowledged that Mr. and Mrs. Simmons did not have a formal partnership agreement. *Connors,* 923 F.2d at 1466–67. Nevertheless, it affirmed the district court's decision that a partnership existed on the basis of two main factors. *Id.* First, the cattle farm operation made mortgage payments on farm land owned jointly by the Simmonses and the couple paid the farm's property taxes. Second, George and Janice Simmons took those payments as deductions on their joint tax return. The court acknowledged that co-ownership of property without more does not create a partnership. But, it found that the facts in this case—especially the sharing of business profits and losses—supported a determination that George and Janice Simmons intended to be partners. *Central States,* 991 F.2d at 392. Both the Seventh and Eleventh Circuits have agreed:

> If, upon consideration of all the facts, it is found that the partners joined together in good faith to conduct a business, having agreed that the services or capital to be contributed by each is of such value to the partnership that the contributor should participate in the distribution of the profits, that is sufficient [to find a partnership existed]. The true focus of the inquiry must be on whether the alleged partners really and truly intended to join together in the present conduct of the enterprise. Their intention in this respect is a question of fact, and may be determined with reference to an express agreement or from the circumstances surrounding the purported partnership arrangement.

*Connors,* 923 F.2d at 1466–67 (quotations

---

12. While we may look to state law for guidance, the question whether a business relationship qualifies as a partnership is ultimately one of federal law. *Id.* at 392.

and citations omitted).[13]

In *Central States*, the Central States, Southeast and Southwest Areas Pension Fund challenged the judgment of the district court, which granted summary judgment in favor of defendant-owner Paul Johnson's wife, Lois Johnson, upon a finding that she was not liable for her husband's pension obligations under ERISA. 991 F.2d 387, 392–93. The Seventh Circuit recognized:

> several pieces of evidence indicating that the property of the leasing business was purchased out of funds jointly owned by the Johnsons; the rental income produced by the business went into joint accounts; losses from the business were taken as deductions from the couple's joint income tax return; Lois Johnson, by her own admission, performed an undetermined amount of clerical or administrative work at her husband's office; and the Johnsons each held a 50 percent interest in another corporation known as Paul's Cartage, Inc.

991 F.2d at 393. The court noted that "*Connors* is premised on flushing out the true intentions of the married couple to pursue business activities together. If that test depended on who is shown as owner of record, it would be easy to protect one spouse simply by listing all business property in the other's name." *Id.*

The court further found that the "moving party (Lois Johnson) relied only on a self-serving conclusory denial that she intended to form a partnership with Paul. The fact that Lois Johnson failed to 'exercise control' over the leasing business is unrevealing." *Id.* at 394. Thus, the court

held that the district court erred in granting summary judgment to Lois Johnson. *Id.*

As the Seventh Circuit did in *Central States*, we apply the test used in *Connors* to determine if Martha Beverley knowingly joined the undertaking that ultimately incurred the termination liability, thus allowing her to be jointly and severally liable for that assessment. The following is undisputed: (1) the Beverleys jointly owned the Coxendale Properties and Don's Trucking during the time in question; (2) there was no express agreement between the Beverleys regarding the leasing activity for the Coxendale Properties; and (3) Martha Beverley served as an officer for Don's Trucking. In addition, during the years 1997 and 1998 all rent payments received for the Coxendale Properties ($129,985.68) were deposited into checking accounts owned jointly by the Beverleys. Also during that time period, Don's Trucking made mortgage payments for the Coxendale Properties—the Beverleys made no mortgage payments from their personal accounts. Since purchasing the Coxendale Properties the Beverleys have continually leased parts of the Coxendale Properties to Don's Trucking and at times to other tenants. The Beverleys paid taxes on the Coxendale Properties from their joint checking accounts and deducted expenses for leasing the Coxendale Properties on their joint tax returns, in the years 1997 and 1998, despite the fact that Don's Trucking paid the mortgage during those years.

It is apparent to this court that the Beverleys did not respect the legal boundaries between Don's Trucking and their

---

13. The court in *Connors* borrowed the Supreme Court's test in *Commissioner v. Culbertson*, 337 U.S. 733, 744–45, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949), in which the Court clarified when a family business qualifies as a partnership for tax purposes.

allegedly "personal" holdings—the Coxendale Properties. Martha Beverley benefitted from the fact that Don's Trucking paid the mortgage on the Coxendale Properties. Further, rents from the Coxendale Properties (from Don's Trucking and other entities) were deposited into the couples' joint account and deducted as expenses on their personal joint tax returns. This mixing of business and "personal" assets leads this court to conclude that the Coxendale Properties were more than personal assets, but were intended to be a rental business partnered by the Beverleys.

Significantly, Mrs. Beverley *never* denied her intent to be a partner in the Beverley Partnership.[14] As noted before, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). This she did not do. In fact, it was only Mr. Beverley who, though not in a better position to know, speculated as to Mrs. Beverley's lack of intent to form a partnership.[15] Because of the undisputed facts in the record that support the existence of Mrs. Beverley's intent to form the Beverley Partnership and the absence of any evidence in the record from Mrs. Beverley denying that she had an intent to form the partnership we find that there is no genuine issue of material fact for trial and that summary judgment was properly granted.

### IV.

Based on the foregoing reasons, we affirm the district court.

*AFFIRMED*

---

**14.** At oral argument, the Beverleys' counsel admitted that Martha Beverley "never testified" and was "never deposed" as to her intent. Additionally, counsel acknowledged that Martha Beverly never presented direct evidence on the issue of intent.

**15.** Even if Mr. Beverley's testimony was admissible, it is fatally undermined by his admission that the couple owned two pieces of real property, one was their home and the other was a "place of business"—the Coxendale Properties. J.A., 88.